UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**THOMAS R. BURGOON,**

        **Plaintiff,**

v.                                                                                     Civil Action No. 2:04cv691

**JOHN E. POTTER,**
**Postmaster General,**
**United States Postal Service**

        **Defendant.**

## ORDER AND OPINION

Pending before the court is the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed with attached supporting exhibits. The plaintiff has not submitted a response. After examination of the brief and record, this court determines oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. The court, for the reasons set out fully herein, **GRANTS** the defendant's motion for summary judgment.

**I.**      **Procedural History**

On November 15, 2004, the plaintiff, Thomas Burgoon, filed a complaint against the defendant, the United States Postal Service. On December 20, 2004, plaintiff filed an amended complaint, alleging past and ongoing employment discrimination based on the plaintiff's race, sex, color, and age, and in retaliation for a prior Equal Employment Opportunity ("EEO") complaint that the plaintiff had filed against the defendant. The plaintiff claims the defendant has engaged in

1

violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. and apparently the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 et seq.[1] The plaintiff seeks damages in the amount of $500,000, and alleges that the discrimination rose to such a level as to lead to a ruptured aneurysm, for which plaintiff was hospitalized and underwent emergency surgery on December 1, 2001.

Defendant responded with its Motion to Dismiss or in the Alternative, for Summary Judgment on March 22, 2005. The plaintiff has since then neither responded nor filed for an extension of time in which to respond. The defendant's motion is now ripe for review.

The defendant's motion requests dismissal on certain grounds, and, in the event that certain or all of plaintiff's grounds for relief survive dismissal, the motion argues that summary judgment is appropriate. The court, in determining which standard of review is applicable, will consider each of the plaintiff's statutory claims for relief.

## II.    Factual Background

The facts presented by the defendant in his Motion to Dismiss or for Summary Judgment remain undisputed. Therefore, they must be taken as the facts for the record. See LOC. R. 56(b). Plaintiff is a Mail Handler with the United States Postal Service, assigned to their Norfolk Air Mail Facility ("AMF"). Plaintiff's supervisor, Thomas Oswald, began a detail at the AMF in mid-January, 2001. In order to quickly learn the names of his employees, Oswald kept a list of employee names on a file on the hard drive of the computer in his office at the AMF. Alongside many of the

---

[1] Although plaintiff did not cite ADEA in his amended complaint, he did allege age discrimination. However, because the standards relating to the burdens and order of proof in Title VII cases also apply in ADEA cases, this court will consider the claims under the ADEA. Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 429 (4th Cir. 2000).

employees' names in the list were acronyms that Oswald used to help him remember faces with names. The acronyms used by Oswald included references to the employee's sex, race, age, facial hair, glasses, etc. Next to plaintiff's name, Oswald had written "womglasses-60s," indicating "white, older male with glasses, in his 60s." With regard to other employees, Oswald used acronyms such as "bom gray beard," which indicated a black, older male with a gray beard, and "byf-short," for a black, young female who was not tall.

Although the file was on the hard drive of the computer in Oswald's office, the hard drive was removed by a computer technician and placed elsewhere in the facility. Without Oswald's permission, someone retrieved the document, printed a copy of the list, and distributed it. Sometime around May 31, 2001, plaintiff saw the list and the acronym next to his name, when he found it lying on the floor in an open area of the AMF. Plaintiff described being shocked at what he believed to be his supervisor's categorization of him as "wasteful and decrepid" [sic].

Plaintiff subsequently contacted an EEO counselor on June 14, 2001, and filed a complaint on August 12, 2001. On November 8, 2001, plaintiff amended his complaint to include additional claims, alleging that he had been subject to retaliation by Oswald because of his initiation of EEO proceedings. In his amended EEO complaint, plaintiff alleged that Oswald had commented "it's tough to be white and work down here," although plaintiff did not indicate that he had witnessed the comment himself, and the evidence is uncontradicted that Oswald was simply talking about himself, as he is white. Plaintiff also alleged that he had complained to Oswald about the performance of another employee–a black female named Phyllis Busch–and that in response Oswald had told him in a threatening tone to "go to 180," in reference to the 180 operation, which is made up of standard letter trays that are to be separated by zip code. Plaintiff further alleges that Oswald then radioed

Busch to "look busy." This is the extent of the specific discriminatory acts alleged by plaintiff.

After the plaintiff filed his amended EEO complaint, it was accepted on August 22, 2001 by the United States Postal Service. Plaintiff requested a hearing and the Postal Service moved for summary judgment, which was granted by Administrative Judge Irma Dillard on April 30, 2003. On May 5, 2003, the Postal Service issued a final decision implementing the Administrative Judge's decision. Plaintiff filed an appeal with the EEOC, but it was denied on September 24, 2003. Plaintiff's motion for reconsideration was then filed with EEOC's Office of Federal Operations, and was denied on August 11, 2004. Plaintiff subsequently filed his initial complaint followed by an amended complaint with this court.

### III.     Standard of Review

A.     Motion to Dismiss

The defendant relies upon Rule 12(b) of the Federal Rules of Civil Procedure in support of its motion to dismiss. However, because the defendant asks the court to look outside of the pleadings in order to evaluate its arguments, the court is required to determine whether the motion to dismiss should be treated as a motion for summary judgment under Rule 12(b)(6). When "matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss for failure . . . to state a claim . . . shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b). Accordingly, the court will treat the defendant's motion to dismiss as a motion for summary judgment.

Rule 12(b) requires that all parties be given "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." This requirement of "reasonable opportunity" means that all parties must be given "some indication by the court . . . that it is treating the [Rule] 12(b)(6)

motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits and pursue reasonable discovery." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985). When a party is aware that material outside the pleadings is before the court, the party has notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment. Id. Here, where the plaintiff is aware that a motion for summary judgment has been made in addition to the motion to dismiss, the requirement of "reasonable opportunity" is satisfied.

B.   Motion for Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exist no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). In Title VII cases, the Fourth Circuit, although cautioning against overuse, has determined that summary judgment may be entered if there are no genuine issues of material fact. See Ballinger v. North Carolina Agric. Extension Ser., 815 F.2d 1001, 1005 (4th Cir. 1987).

Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex Corp., 477 U.S. at 322-24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by the plaintiff to rebut defendant's motion with such evidence will result in summary judgment. "[T]he plain language of Rule 56 mandates the entry of summary judgment . . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Although the moving party bears the initial burden of stating the basis for its motion, that burden can be discharged if the moving party can show "an absence of evidence to support the non-moving party's case." Id. at 323, 325. After the moving party has discharged the burden, the non-moving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324.

To enter summary judgment, a court does not need to determine that there are no factual issues in dispute. To find against the moving party, however, the court must find both that the facts in dispute are material and that the disputed issues are genuine. A factual dispute is deemed to be material if it is dispositive of the claim. See Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Similarly, a factual dispute is considered genuine if it is based on more than speculation or inference. Celotex Corp., 477 U.S. at 327; Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997).

While it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-movant's burden to establish the existence of such an issue. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. To survive summary judgment, the non-moving party must present evidence that is "significantly probative." Celotex Corp., 477 U.S. at 327.

While the defendant has provided the court with eight exhibits in support of its motion, the

plaintiff has failed to even respond to the motion. The exhibits provided by the defendant chronicle the administrative and investigative record developed during the EEO proceedings on the plaintiff's claims. Included among the exhibits is a sworn affidavit from Thomas Oswald, plaintiff's supervisor at the Norfolk AMF, directly bearing on the claims in the instant case.

By failing to respond in any form to defendant's motion for summary judgment, plaintiff has brought himself within the purview of Federal Rule of Civil Procedure 56(e), which states "the adverse party's response . . . must set for specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." The facts as presented in defendant's motion for summary judgment remain uncontradicted, and therefore must be taken as the factual basis for this court's decision. See Loc. R. 56(b).

**IV.    Analysis**

A.    Employment Discrimination

The plaintiff's claims of employment discrimination can be broken into three categories: (1) that he was subject to disparate treatment by his employer; (2) that he was retaliated against by his employer for engaging in a protected activity; and (3) that his employer created a hostile work environment for him.

Plaintiff's allegations of discrimination on the basis of race, color, and sex come under Title VII, which prohibits employers from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Employers are also forbidden to "limit, segregate, or classify

[their] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).

Under the ADEA, which covers plaintiff's age discrimination claim, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 633(a)(1).  The ADEA includes a separate provision that applies specifically to government agencies, including the United States Postal Service, which prohibits the government from discriminating on the basis of age in any personnel action.  29 U.S.C. § 633a.  That section also specifies that no other section (except the age limit listed in 29 U.S.C. § 631(b)) will apply to suits against the federal government.  Although the language of the provisions are different, the same standard is applicable in dealing with the federal government as with private employers.  See Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991).  Both the ADEA and Title VII prohibit an employer from retaliating against an employee who has asserted his right to be free from discrimination.  29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a).

A plaintiff may establish a claim of discrimination or retaliation in one of two ways.  First, the plaintiff may present direct or indirect evidence of the discriminatory animus alleged.  Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999).  In order to defeat summary judgment, the plaintiff must demonstrate "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).

If such evidence is not available to the plaintiff, he may rely on the burden-shifting scheme as articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny. This scheme requires the plaintiff to establish a prima facie case of discriminatory action, which gives rise to a presumption of discrimination. Id. at 802. Establishment of this presumption shifts the burden to the defendant to produce a legitimate, non-discriminatory reason for its action. Id. at 802-03. It is a burden of production, as opposed to a burden of proof, that the defendant has. If he meets this burden of production, the presumption of discrimination vanishes, and the plaintiff must show that the employer's proffered explanation is simply a pretext for intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

"An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination" or fails to show that the employer's proffered legitimate non-discriminatory reason is unworthy of belief. Henson v. Ligget Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995); see also Reeves, 530 U.S. at 143. If "no rational fact-finder could conclude that the action was discriminatory," the plaintiff cannot withstand the defendant's motion for summary judgment. Reeves, 530 U.S. at 148. Here, the plaintiff has not presented any direct or indirect evidence of a discriminatory animus on the part of the employer, and therefore must rely on setting out a prima facie case.

B.      Disparate Treatment

To establish a prima facie case of disparate treatment based on race, color, sex, or age, the plaintiff must show that (1) he is a member of a protected class; (2) he was subject to an adverse employment action; and (3) he was treated differently than similarly situated employees outside of his protected class. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Although plaintiff, by virtue of being over 40 years of age, is a member of a protected class as defined by the ADEA, he is unable to demonstrate that any of the actions about which he complains constitute an "adverse employment action." An adverse employment action stems from an employer's conduct that materially alters the terms, conditions, or benefits of employment. Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001). An inquiry into the adverse nature of an employer's action ordinarily focuses on whether the employee has suffered termination, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or decreased opportunities for promotion. Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999). "[D]ecisions having no immediate effect upon employment conditions . . . were not intended to fall within the direct proscription of [Title VII]." Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc).

Plaintiff has alleged four specific acts of discrimination, yet none of them can be considered "adverse employment actions," for the simple fact that none of them resulted in a change in plaintiff's employment condition. Moreover, plaintiff cannot demonstrate that he was treated differently than other employees outside of his group. In fact, the list of employees that Oswald, his supervisor, had kept included acronyms referring to employees who fall outside of plaintiff's protected class. Plaintiff has not alleged, nor can he demonstrate that Oswald never directed other employees to "go to 180" or any of the other locations at the AMF where work needed to be done. Plaintiff has not alleged, nor can he demonstrate that Oswald was talking to anyone other than himself when he commented that, "it's tough to be white and work down here." Plaintiff therefore cannot show any genuine issues of material fact with regard to his allegation of disparate treatment upon which a reasonable fact-finder could base a ruling in his favor.

C.   Retaliation

To establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in a protected activity; (2) the employer took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. See Von Gunten, 243 F.3d at 863. There is no evidence that plaintiff was engaged in a protected activity before he became aware of Oswald's use of an acronym to identify plaintiff. It follows, therefore, that this action by the employer cannot be considered retaliatory, simply because there was nothing for the employer against which to retaliate. The remaining three alleged discriminatory acts all occurred after plaintiff filed his EEO claim, which is a protected activity. However, all three clearly fall short of constituting adverse employment actions. Moreover, there exists no causal connection between the actions and plaintiff's filing of an EEO complaint, as plaintiff has shown no evidence demonstrating that Oswald was motivated by plaintiff's prior EEO activity in directing the plaintiff to "go to 180," telling another employee to "look busy," or stating out loud that "it's tough to be white and work down here." See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). Simply stated, plaintiff cannot demonstrate any genuine issues of material fact with regard to retaliation, upon which a reasonable fact-finder could base a finding in his favor.

D.   Hostile Work Environment

To establish a prima facie case of hostile work environment, the plaintiff must offer specific evidence that shows that (1) he experienced unwelcome harassment; (2) the harassment was based on his gender, race, color, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th

11

Cir. 2003). Here, plaintiff complains that his supervisor used an acronym referring to his race, color, sex, age, and use of glasses. He also complains that Oswald, his supervisor, ordered him to a particular location at the facility in a threatening tone, while then telling an African-American co-worker to "look busy." Finally, he alleges that his supervisor stated, "it's tough to be white and work down here." In determining whether a hostile work environment exists, a view of the totality of the circumstances is proper, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). See also Bass, 324 F.3d at 765. To amount to a change in the terms or conditions of employment, discriminatory conduct must be extreme. Faragher v, City of Boca Raton, 524 U.S. 775, 788 (1998).

     Even assuming the truth of plaintiff's allegations, the conduct alleged simply does not rise to the level of creating a hostile work environment. Specifically, none of the alleged discriminatory acts serve to alter the terms and conditions of employment. Plaintiff's viewing of the assignment roster with acronyms next to it did not affect his job duties, his pay, or any other benefit, term, or condition of his employment. That plaintiff was told to "go to 180" in a threatening tone did not constitute harm or loss with respect to a term or condition of his employment. In similar fashion, Oswald telling another employee to "look busy" does not constitute an adverse employment action. Finally, plaintiff can point to no harm or loss with respect to the terms of his employment as a result of Oswald's statement that, "it's tough to be white and work down here." Viewed in its entirety, the discrimination that plaintiff alleges is insufficient to meet the standard required to establish a claim of hostile work environment. Von Gunten, 243 F.3d at 865. "The existence of a hostile environment

cannot be predicated upon acts that are isolated or genuinely trivial." Carter v. Ball, 33 F.3d 450, 461 (4th Cir. 1995). Plaintiff has therefore failed to set out any genuine issues of material fact the finding of which could result in a reasonable fact-finder to rule in his favor.

E.      Legitimate, Non-discriminatory Reasons

Even were the plaintiff able to establish a prima facie case of discrimination on any of his claims, defendant has offered clearly legitimate, non-discriminatory explanations for his actions. McDonnell Douglas Corp., 411 U.S. at 802-03. Oswald has explained that he kept the list of employee names with acronyms next to them in order for him to be able to remember names and faces. That Oswald may have ordered plaintiff to perform a certain task at the AMF is precisely in accordance with his duties as supervisor. Similarly, by telling another employee to "look busy," Oswald was acting in accordance with his responsibilities by encouraging her to work after he had received complaints that she was not working. There is no evidence that Oswald was referring to anyone but himself when he stated, "it's tough to be white and work down here." These reasons are legitimate and clearly non-discriminatory, and therefore would function to rebut the presumption of discrimination that would arise if plaintiff had established a prima facie case. Id.

The court concludes that the defendant has carried its burden of establishing that, even viewing the record in the light most favorable to the plaintiff, no genuine issues of material fact exist in this case. Celotex Corp., 477 U.S. 322-24. The plaintiff has failed to set forth any evidence establishing the existence of a triable issue, despite having notice of the nature of the defendant's motion and the opportunity to fully respond. Bradford v. School Dist. No. 20, 364 F.2d 185, 187 (4th Cir. 1966). Furthermore, the court finds that the defendant has demonstrated the "absence of evidence to support the non-moving party's case." Celotex Corp., 477 U.S. at 324. In the face of

13

evidence submitted by the defendant to this effect, the plaintiff cannot rely merely on the allegations made in his pleadings and still survive summary judgment.  See FED. R. CIV. P. 56(e).

**V.     Conclusion**

The parties to this case have some history of confrontation.  The plaintiff must realize, however, that unless he can demonstrate that he experienced an adverse employment decision that resulted from a protected characteristic, a case under Title VII or the ADEA will fail.

For the reasons stated on the record, and for those discussed above, the court **GRANTS** the defendant's motion for summary judgment with respect to the plaintiff's entire claims.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for all parties.

It is so **ORDERED**.

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

May 16, 2005
Norfolk, Virginia